**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| | : | |
| JOSEPH CODY, | : | |
| | : | Civ. No. 20-12919 (CCC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CINDY SWEENEY, THE ATTORNEY | : | |
| GENERAL OF THE STATE OF NEW | : | |
| JERSEY, | : | |
| | : | |
| Respondents. | : | |
| | : | |

_____

**CECCHI, District Judge**

Pro se petitioner Joseph Cody, a state prisoner currently incarcerated at East Jersey State Prison in Rahway, New Jersey, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 3) and a motion for an evidentiary hearing and to appoint pro bono counsel (ECF No. 16). For the reasons below, the petition and motion are denied and no certificate of appealability shall issue.

## I.   BACKGROUND

Cody's conviction arises out of the 2012 beating and robbery of a gas station attendant in Newark, New Jersey. The Superior Court of New Jersey, Appellate Division, summarized the underlying circumstances of this case on direct appeal:[1]

> On April 20, 2012, Surjit Singh was working as an attendant in a service station at the corner of Frelinghuysen and Meeker Avenues in Newark. As Singh began to pump fuel into a truck, two men, later identified by Singh as Joseph and Victor

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference to the factual determinations of the State court. _Id._ ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Cody,[2] beat and robbed him. Victor grabbed Singh from behind and took money from his pocket, while Joseph hit Singh in the face with a metal object, fracturing his left cheek. Singh was able to see both men as they fled.

A surveillance video shows Singh walking toward the truck before the attack at 12:21 p.m. Singh is seen walking around the front of the truck to the driver's side, out of camera range. Less than one minute later, two men can be seen walking around the front of the truck. One of the men wore a hooded coat while the other wore a shirt with a distinctive cross pattern on the back, similar to one recovered after the robbery.

Lorraine Bellamy was at the station and witnessed the robbery, but could not identify anyone. Tashon Brown, an off-duty firefighter, was in the station's convenience store at the time of the robbery. Bellamy told Brown that a man had been robbed and the attackers fled through the park across the street. She described one of the robbers as wearing a dark blue jacket and the other as wearing a white shirt or sweatshirt. Bellamy also told Brown that one of the men had a "low" haircut while the other had longer braids.

Brown told Bellamy he was "going to get them people" and drove out of the station in the direction that Bellamy saw the men fleeing. Brown radioed a report of the robbery and a description of the suspects he had been given to his fire department dispatch. As Brown approached Dayton Street, he spotted two men fitting the description of the robbers in the park who were hastily removing some of their clothing. Brown informed dispatch as he followed the men out of the park and observed them enter a gold Nissan Maxima.

Brown followed the Nissan southwest on Dayton to Foster Street and then north on Frelinghuysen, while simultaneously relaying the license plate number and location of the Nissan to his dispatch. Brown's information was, in turn, relayed to Newark police.

As Brown was following the Nissan, Newark Police Officer Jimmy Rios and his partner Exmil Gonzalez received the report of the robbery and spotted the Nissan. Rios followed the Nissan and initiated a traffic stop. Brown continued to follow the Nissan until it was stopped by police; he then returned to the gas station.

The officers identified Arthur Armstrong as the driver of the Nissan. Joseph Cody was sitting in the front passenger seat, while Victor Cody was in the back seat. Rios told the occupants of the car to keep their hands visible. Armstrong and Joseph complied, but Victor kept his hands near his waistband. After Victor failed to comply with a second command to show his hands, Rios drew his gun and again instructed Victor to show his hands. Victor complied and, after he and the occupants were removed from the vehicle, Victor was patted down and a bundle of money

---

[2] To avoid confusion, the Court refers to Cody's brother and co-defendant, Victor Cody, as Victor.

totaling $1,319 was found in his waistband. A black hoodie and a grey shirt with a distinctive cross design were recovered from the vehicle.

All three men were arrested and taken in separate cars back to the gas station to see if Singh could identify them. Before Singh saw Victor and Joseph, Rios told Singh that the men he would see may not have been involved in the crime and he was under no pressure to identify anyone. Singh identified both defendants as the ones who robbed and beat him. Specifically, Singh said Victor was the one who held him and Joseph struck him in the eye with a metal object. The show-up was partially recorded on the surveillance camera. Although there is no audio, the video contains a time reference which indicates that the show up began at 12:36 p.m., fifteen minutes after the robbery. Singh testified at trial that, when he identified defendants on April 20, 2012, he was one hundred percent sure that they were the people who robbed him.

Prior to trial, the judge conducted a *Wade*[3] hearing to determine the admissibility of Singh's out-of-court identification of defendants. Sergeant David Robinson, the first officer to respond to the gas station, testified that he had difficulty communicating with Singh because of a language barrier, so Mandeep Kaur, a woman who also worked at the gas station, translated for him.

Although Singh had sustained injuries to his eye and was bleeding, Robinson found that he was very alert. After defendants were arrested, Robinson radioed to the officers to bring them to the gas station to see if Singh could ma[k]e an identification.

When the officers arrived, Robinson told them to bring out each defendant, one at a time. When they were presented for identification, both defendants were handcuffed with their hands behind their backs and were each accompanied by two uniformed police officers.

Singh identified Joseph as the officers were still transporting him from the car. Singh noted Joseph's braids and said he was the one who hit him. Singh also quickly pointed at and identified Victor when he was brought out. Robinson did not prepare any documents or make notes about his interactions with Singh.

The judge found that the show-up identification was suggestive, but after hearing only Robinson's testimony, he ruled that he did not have enough evidence to resolve the question of whether the identification was sufficiently reliable to be admitted at trial.

The State then called Singh, who testified through an interpreter that he recognized defendants and was very sure of his identification. Singh stated that he saw the face of the person who grabbed him from behind when that person released him. He described the person who grabbed him from behind as being shorter than him and having a lighter complexion than the person in front of him. Singh said that both

---

[3] *United States v. Wade*, 388 U.S. 218 (1967).

individuals were clean-shaven, and the person who grabbed him was wearing a muddy, yellow-colored shirt.

The judge then denied defendants' motions to suppress the out-of-court identification by Singh. He found no evasiveness by either witness and noted that Singh's difficulty with English may have accounted for some of the inconsistencies in his descriptions. The judge determined that the show-up identification was suggestive because defendants were shown to the victim in handcuffs and accompanied by uniformed officers. Also, the victim was in a position to see both defendants together before they were separately displayed.

Despite its suggestiveness, the judge found that the identifications were sufficiently reliable. The judge noted that, during the robbery, Singh had the opportunity to observe the face of both defendants as they ran away, and the subsequent identifications took place within fifteen minutes of the incident. The judge found that the level of confidence Singh expressed in his identifications during the hearing was corroborated by the speed at which the show-up identifications were made.

The judge also conducted a brief pretrial hearing to determine the admissibility of the 911 call, and fire department dispatch and police recordings of the incident. The State offered the recordings as non-testimonial business recordings and present sense impressions. The judge admitted portions of the recordings.

The 911 recording was admitted because the statements were non-testimonial and meant to resolve an emergency, the speaker was referring to events as they were happening, and the "call was plainly a call for help against a bona fide physical threat." The judge also found that portions of the 911 recording were admissible under the present sense impression and the excited utterance exceptions to the hearsay rule.

The segment of the fire department dispatch recording that was admitted was determined to be non-testimonial and fell under the present sense impression hearsay exception.

*State v. Cody*, No. A-5005-13T2, 2016 WL 3369531, at *2–4 (N.J. Super. Ct. App. Div. June 20, 2016) (footnote omitted). Additionally,

After eleven hours of deliberations, the jury reported they were at an impasse. The trial court, who was also the PCR court, instructed the jury to continue its deliberations, gave the instruction approved in *State v. Czachor*, 82 N.J. 392 (1980), and provided a written copy of the jury charge over the objection of defense counsel. The jury also heard readbacks of Singh and Lorraine Bellamy's testimony.

*State v. Cody*, No. A-0754-18T2, 2020 WL 2601974, at *1 (N.J. Super. Ct. App. Div. May 22, 2020).

The jury convicted Cody and Victor of second-degree conspiracy to commit robbery, first-degree robbery, fourth-degree unlawful possession of a blunt object under inappropriate circumstances, and third-degree possession of a weapon with an unlawful purpose. *Cody*, 2020 WL 2601974, at *1; ECF No. 13-2 at 2–4 (judgement of conviction). Cody was sentenced to 25 years with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and 5 years of parole supervision. *Cody*, 2020 WL 2601974, at *1; ECF No. 13-2 at 2. The judge also imposed a discretionary extended term for persistent offenders under N.J.S.A. 2C:43-7.1(b); ECF No. 13-2 at 2. The Appellate Division consolidated Cody and Victor's appeals and, in June 2016, affirmed. *Cody*, 2016 WL 3369531, at *13. Certification was denied in January 2017. *State v. Cody*, 228 N.J. 503 (2017). Cody's petition for post-conviction relief ("PCR") was denied in May 2018, *Cody*, 2020 WL 2601974, at *1; the Appellate Division affirmed in May 2020, *id.*; and certification was denied in January 2021, *State v. Cody*, 245 N.J. 37 (2021).

Cody filed an initial habeas petition and a motion to stay in September 2020. ECF No. 1.[4] In March 2021, Cody filed a second petition asserting the following grounds for relief: (1) trial counsel was constitutionally deficient for failing to move to suppress evidence obtained pursuant to Cody's alleged unlawful arrest (ECF No. 3 at 19–22); (2) trial counsel was ineffective during plea negotiations for advising Cody that certain video and clothing evidence would not be used against him (*id.* at 23–24); (3) trial and appellate counsel were ineffective for failing to raise the

---

[4] Cody did not include grounds for relief in his initial petition. He instead directed the Court to "see attached pages," ECF No. 1 at 6–11, but failed to attach additional pages to his petition. Likewise, he indicated in his motion for a stay that he would "rely on the attached certification in support of [his] motion," ECF No. 2 at 1, but did not attach a certification to his motion. It appears from a review of his initial petition that Cody was seeking a stay while awaiting a ruling from the New Jersey Supreme Court on his appeal of the denial of his PCR petition. ECF No. 1 at 15. Nonetheless, the Court did not direct Cody to specify the grounds for relief in his petition or provide the Court with support for his motion because Cody thereafter filed a second petition articulating his grounds for relief, ECF No. 3, and advising the Court that his petition for certification was denied on January 22, 2021, ECF No. 3 at 15.

issue of the trial court's "intrusion into the jury's deliberative process" (*id.* at 25); (4) the trial court erred by admitting the show-up identification (*id.* at 26–28); and (5) the cumulative effect of trial and appellate counsels' alleged errors amounted to ineffective assistance of counsel (*id.* at 29–31). The State answered in August 2021. ECF Nos. 12, 13. Cody did not file a reply; however, in October 2022, he moved for an evidentiary hearing and appointment of pro bono counsel. ECF No. 16.

## II.   LEGAL STANDARD

The district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts must defer to the determinations of state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court. *Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions

only when there could be no reasonable dispute that they were wrong." *Id*. If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). These standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

## III.   DISCUSSION

### A.  Admission of Show-Up Identification (Ground Four)

Cody argues that the trial court erred by admitting the show-up identification. ECF No. 3 at 26–28. The Appellate Division rejected this claim:

> Joseph argues that the trial judge erred by admitting the show-up identifications at trial because the police failed to make a written record of the identification procedure as required by *State v. Delgado*, 188 N.J. 48 (2006). He also argues that the identifications should not have been admitted because they were unreliable due to the victim's brief opportunity to view the assailants, the impairment of the victim's perception due to stress and injury, and the inconsistencies in the description of the assailants that the victim later provided. Victor also argues that the show-up identifications were inherently suggestive and unreliable.
>
> . . .
>
> The trial judge held that the two-prong test articulated by the United States Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98 (1977), and adopted by our Supreme Court in *State v. Madison*, 109 N.J. 223, 232–33 (1988), applied . . . .
>
> Under the *Manson/Madison* framework, the judge must first decide whether the procedure in question was impermissibly suggestive. *Madison*, *supra*, 109 N.J. at 232. If so, the judge must then decide whether the objectionable procedure resulted in a "very substantial likelihood of irreparable misidentification." *Ibid*. (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In carrying out this analysis, the judge must focus on the reliability of the identification. *Ibid*. If the judge finds that the identification is reliable despite the impermissibly suggestive nature of the procedure, the identification may be admitted into evidence. *Ibid*.

7

In assessing reliability, the judge must consider five factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *State v. Herrera*, 187 N.J. 493, 507 (2006) (quoting *Manson*, *supra*, 432 U.S. at 114).

Singh had an opportunity to view his assailants in bright sunlight and at close range, and the certainty of his identifications were apparent on the surveillance video. Singh was also not under the influence of alcohol or drugs, and only fifteen minutes elapsed between the time of the robbery and the identifications. The other evidence at trial bolstering reliability included Brown's observation of both defendants in the park shedding clothing minutes after he was given a description of the robbers by Bellamy; his following of defendants until their apprehension; and the large amount of cash found hidden in Victor Cody's waistband.

However, the most compelling evidence supporting reliability is the surveillance video showing Singh walking around the front of the truck followed less than one minute later by two men who proceeded to the same location. Given the timing, the jury could have reasonably concluded that the two men following Singh were indeed the robbers, and the very distinctive cross design appearing on the back of the shirt worn by the second man in the video was identical to the design on the shirt found in the Nissan minutes after the robbery. We are satisfied that the show-up identifications, while suggestive, were sufficiently reliable to be presented to the jury.

*Cody*, 2016 WL 3369531, at *5–7.

As an initial matter, Cody's argument that the identification procedure did not comply with *Delgado* because the police did not make a written record of the identification procedure raises an issue of state law and, therefore, does not provide a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law") (internal quotation marks omitted).

As to Cody's argument that the identification was unreliable, the Court finds that the Appellate Division applied clearly established federal law to evaluate the admissibility of the identification and reasonably found that the identification, while suggestive, was sufficiently reliable for presentation to the jury. *Cody*, 2016 WL 3369531, at *7. Applying the *Manson v. Brathwaite* factors, the Appellate Division noted that Singh saw his assailants in bright sunlight

and at close range; he was not under the influence of alcohol or drugs; the certainty of his identifications [was] apparent on the surveillance video; and only 15 minutes had elapsed between the robbery and the identifications. *Cody*, 2016 WL 3369531, at *5–7. The court also noted several other facts supporting reliability of the identification, including the "compelling" evidence of the surveillance video and the distinctive design on the t-shirt worn by one of the men in the video, which "was identical to the design on the shirt found in the Nissan minutes after the robbery." *Id*. Further, in denying Cody and Victor's motion to suppress the out-of-court identifications, the trial judge noted that Singh testified that "he had the direct opportunity to . . . observe the face of the individual who allegedly struck him in the face, . . . the taller individual . . . being Joseph Cody." ECF No. 13-13 at 82 (also noting Singh's testimony that "he had the opportunity to see the faces of both of the defendants when they ran from him.").

On this record, there was sufficient, credible evidence to conclude that the identification was reliable and properly admitted. Cody has not shown that the Appellate Division's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, nor has he shown that it was based on an unreasonable determination of the facts in light of the evidence presented. *See, e.g.*, *Blount v. Davis*, No. CV 19-409, 2022 WL 807430, at *5 (D.N.J. Mar. 17, 2022) (finding no error in Appellate Division's determination that identification was sufficiently reliable where "the show-up occurred within two hours of the incident, the victim immediately identified defendant without any uncertainty, the distance discrepancy between the victim and defendant at the show-up was minor, and nothing obstructed defendant's view of defendant."); *Washington v. Warren*, No. 12-1184 MAS, 2015 WL 502156, at *10 (D.N.J. Feb. 5, 2015) (petitioner not entitled to habeas relief on identification claim where "the area where the robbery occurred was well-lit; [petitioner] had the opportunity for two or three minutes to observe

the face of defendant who was, at most, only three feet away from him during the robbery, which demonstrates a level of certainty; and it was an extremely short period of time between the robbery to the time of the identification"). Habeas relief on Ground Four will be denied.

### B.  Ineffective Assistance of Counsel (Grounds One, Two, Three, and Five)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim of ineffective assistance has two necessary components. *Id*. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," *id.* at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of trial would have been different absent the deficient act or omission. *Id.* at 687.

Criminal defendants are also entitled to the effective assistance of counsel during plea negotiations. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The *Strickland* standard also applies in evaluating claims of ineffective assistance during the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Trial counsel can be ineffective if his or her erroneous advice results in the rejection of a plea offer, provided the defendant would have otherwise accepted the plea bargain. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). To establish prejudice from ineffective assistance during the plea bargain process, a petitioner must demonstrate that, but for counsel's errors, the outcome of the process would have been different. *See Hill*, 474 U.S. at 59. If the defendant has been convicted after trial and alleges ineffective assistance in connection with non-acceptance of a plea, the defendant must establish that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e.,

that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. Additionally, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Finally, on habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable, a higher standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

### 1. Ground One

Cody argues that trial counsel was ineffective because he did not move to suppress the evidence obtained from the motor vehicle stop. ECF No. 3, Attached Pages, at 3–6. He asserts that the state court's finding that he was subjected to an investigatory stop rather than an arrest was an unreasonable determination of the facts because the courts failed to consider "that weapons were drawn and [Cody] was forcefully taken into custody." *Id.* at 6. On this basis, he contends that "the evidence admitted at trial [was] fruits of an unlawful arrest" and counsel was ineffective for not presenting this argument to the trial court. *Id.*

The PCR court rejected this claim. ECF No. 13-6, Op. at 11–16. In affirming, the Appellate Division summarized the PCR court's findings as follows:

> Ultimately, the PCR court concluded defendant failed to demonstrate that either his trial counsel or appellate counsel was ineffective. More specifically, the PCR court found the restraint on defendant's liberty "arose to an investigative detention, rather than a custodial arrest," pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The PCR court noted that "[s]ome restraint of a suspect's liberty is inherent in any 'show-up'" and the detention was no longer than reasonably necessary to facilitate the identification process, lasting fifteen minutes. Therefore, the PCR court determined

that defendant failed to establish his trial counsel was ineffective for failing to move to suppress the show-up identifications under Rule 3:5A.

The PCR court found defendant was not arrested until Singh identified him and Victor Cody as the perpetrators. Singh stated defendant "struck him in the eye with some type of object." At that point, the PCR court determined the officer had probable cause to arrest defendant. A passerby, Bellamy, observed the robbery and physically described defendant and his brother as they ran from the scene of the crime. Surveillance video showed two men—one "wore a hooded coat while the other wore a shirt with a distinctive cross pattern on the back . . . ." Defendant's clothing matched the description given by Bellamy to the police. The PCR court found the officers had "sufficient objective justification to remove" defendant from the Nissan and his "clothing remained visible on the front passenger floorboard" in plain view.

*Cody*, 2020 WL 2601974, at *2–3.

The Appellate Division affirmed "substantially for the reasons expressed by the PCR court

in its well-reasoned written opinion," and added the following:

Defendant's contention that the PCR court erred in rejecting the claim that his trial counsel was ineffective for not filing a motion to suppress evidence lacks merit. Here, Brown was in the gas station's convenience store when the robbery took place. He followed defendant and co-defendant Victor Cody and saw them enter the Nissan. Brown called the police and provided them with the license plate number and the location of the vehicle.

The police stopped the Nissan and ordered defendant and his brother out of the car. Defendants were brought back to the gas station for a show-up identification. Singh identified defendant and his brother as the perpetrators of the robbery and assault fifteen minutes after the acts were committed. According to Singh, co-defendant Victor Cody held him while defendant struck him in the face with a metal object.

We are convinced the PCR court properly rejected defendant's argument and denied the petition. The record supports the PCR court's finding that defendant and his brother were not arrested until after Singh identified them as the perpetrators. They were stopped and detained on reasonable suspicion pending the identification procedure. The PCR court aptly found that the detention was no longer than reasonably necessary to facilitate the identification process.

*Cody*, 2020 WL 2601974, at *3–4.

As to the physical evidence, the PCR court found that the cash was seized incident to

Victor Cody's lawful arrest:

12

[P]etitioner concedes that the police officer had reasonable suspicion to pat [Victor] down to [e]nsure officer safety at the scene of the motor vehicle stop. At trial, Officer Rios testified that he discovered a bundle of cash in Victor Cody's waistband during a *Terry* frisk for weapons. The cash was not confiscated at that time and "at that point in time the money was allowed to remain on Mr. Victor Cody." It was not until Victor Cody was returned to the gas station and identified by the victim that the officer took possession of the money. Petitioners were not arrested until after they were positively identified by the victim within fifteen minutes of the robbery. At that time, the officer had probable cause to arrest and perform a search incident thereto. *See Weeks v. United States*, 232 U.S. 383, 392 (1914). The cash was properly seized incident to that lawful arrest.

ECF No. 13-6, Op. at 18 (citation omitted).

The court further found that the clothing was seized pursuant to the plain view

doctrine:

Petitioners further claim that trial counsel should have moved to suppress the clothing—a black hooded sweatshirt and a graphic t-shirt bearing a cross design on the back—which were located within the passenger compartment of the vehicle. Petitioners argue that a search occurred, and that this should be suppressed because no search warrant was obtained and no exigency was established. However, it is well established that a simple observation into the interior of an automobile by a police officer located outside of the automobile is not a search. Since the clothing was observable from outside of the motor vehicle, petitioners had no reasonable expectation of privacy concerning that clothing and no "search" occurred.

. . .

When the officers stopped the Maxima, they reasonably suspected that its occupants committed an armed robbery. Upon stopping this car, the officers instructed the passengers to keep their hands visible. Victor Cody did not comply with the officer's repeated order to show his hands until the officer produced his service weapon. Accordingly, the officers had sufficient objective justification to remove the driver (Mr. Armstrong) and both passengers (Cody brothers) from the vehicle. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (vehicle frisk); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (driver exit). When these occupants were lawfully removed from the vehicle, the clothing remained visible on front passenger floorboard.

Officer Rios also testified that, at the time the three suspects were removed from the vehicle, he took pictures of the interior of the Maxima. The pictures depicted a black hooded sweatshirt and a light colored shirt at the front passenger side floorboard. This clothing was in the plain view of the officer and was similar to the initial description of the robbers given by the crime scene witness and corroborated by the surveillance video.

. . . [P]etitioner Joseph Cody maintains that the distinctive cross markings on the shirt were not clearly observable as it was positioned on the floorboard. Significantly, firefighter Brown observed the suspects hastily removing clothing as they fled the crime scene and entered the Maxima. Hence, *any* discarded clothing within the Maxima had evidential value. The significance or evidential value of this clothing was so "immediately apparent" to Officer Rios that he took a photograph of this evidence, once the petitioners alighted from the Maxima. . . .

. . .

Assuming *arguendo* that the clothing was not lawfully seized; the vehicle would have been subject to inventory search after being impounded, due to arrests of all vehicle occupants. Thus, since several independent grounds exist to deny a motion to suppress the clothing, petitioners have failed to establish deficient performance as required under *Strickland*'s first prong.

Application of *Strickland*'s second prong also compels denial of [this claim]. Apart from the physical evidence seized, the victim's unequivocal identification of the petitioners and the surveillance video depicting the criminal incident provided ample independent evidence to support the convictions.

ECF No. 13-6, Op. at 18–20 (footnote, brackets, ellipses, quotations, and citations omitted; emphasis in original).

With these state decisions in mind, the Court turns back to Cody's ineffective assistance claim based on counsel's alleged failure to move to suppress evidence. As a general matter, the Fourth Amendment guarantees:

the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. Not all seizures, however, are arrests. Under *Terry v. Ohio*, 392 U.S. 1 (1968), and subsequent cases, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Reasonable, articulable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the

evidence." *Wardlow*, 528 U.S. at 123. Only a "minimal level of objective justification" is necessary for a *Terry* stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also United States v. Silveus*, 542 F.3d 993, 999–1000 (3d Cir. 2008) (reasonable suspicion poses a lower hurdle because the level of intrusion on an individual's liberty is less).

"The Supreme Court has not established a bright-line rule to distinguish a warrantless arrest from an investigatory stop." *Grant v. City of Philadelphia*, No. 20-735, 2022 WL 11615669, at *4 (E.D. Pa. Oct. 20, 2022). Ultimately, the "reasonableness of the intrusion is the touchstone of our analysis." *United States v. Torres*, 961 F.3d 618, 622 (3d Cir. 2020) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir. 1995)). "The Supreme Court has emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Torres*, 961 F.3d at 622 (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985)); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."); *Terry*, 392 U.S. at 21 ("[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.").

When "an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous," a *Terry* stop may include "a patdown search to determine whether the person is in fact carrying a weapon," but "must be strictly limited to that which is necessary for the discovery of weapons." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (internal quotation marks and citations omitted). If during the frisk for

weapons, the officer feels an object whose "contour or mass makes its identity [as contraband] immediately apparent," the officer may seize it. *Id.* at 375–76.

Further, "[a]n officer with reasonable suspicion that the occupants of a vehicle are armed and dangerous does not act unreasonably by drawing his weapon, ordering the occupants out of the vehicle, and handcuffing them until the scene is secured." *United States v. Johnson*, 592 F.3d 442, 453 (3d Cir. 2010). Indeed, "the vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest *per se*." *Johnson*, 592 F.3d at 453 (citing *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (collecting cases)). And "placing a suspect in handcuffs while securing a location or conducting an investigation" does not "automatically transform an otherwise-valid *Terry* stop into a full-blown arrest." *Johnson*, 592 F.3d at 453; *see also Baker*, 50 F.3d at 1193 ("There is no *per se* rule that pointing guns at people, or handcuffing them, constitutes an arrest.").

Also, "objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence." *Harris v. United States*, 390 U.S. 234, 236 (1968). This plain view doctrine allows for the warrantless seizure of an item when three requirements are met: (1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself. *United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (citing *United States v. Menon*, 24 F.3d 550, 559–60 (3d Cir. 1994)); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 466–68 (1971). When police observe an item left in plain view, "'information obtained . . . may be the basis for probable cause or reasonable suspicion of illegal activity. In turn, these levels of suspicion may, in some cases . . . justify police conduct affording

them access to a particular item.'" *Stabile*, 633 F.3d at 241 n.17 (quoting *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983)).

Under the fruit of the poisonous tree doctrine, "evidence gathered as a result of an unlawful search or seizure must be suppressed at trial." *United States v. Coggins*, 986 F.2d 651 (3d Cir. 1993). Further, when a petitioner alleges that his trial counsel was ineffective for failing to litigate a Fourth Amendment claim, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Wharton v. Vaughn*, 722 F. App'x 268, 273–74 (3d Cir. 2018).

Here, the state courts reasonably found that (a) Cody was subjected to an investigative stop and detention pending an identification procedure rather than a custodial arrest, and (b) counsel was not ineffective for failing to move to suppress the evidence. The state court identified specific and articulable facts that led the police officers to reasonably believe that Cody and his brother had been engaged in criminal activity at the time the officers came upon the vehicle. ECF 13-6, Op. at 12 (The PCR court noted that "as petitioners properly concede, the officers had the requisite reasonable suspicion to stop the motor vehicle and detain its occupants. This concession is amply supported by the trial record which abounds with objective facts supporting the officers' reasonable suspicion that, at the time of the motor vehicle stop, the occupants were fleeing in that vehicle from the scene of a robbery."); *id.* at 16 ("Lorraine Bellamy witnessed the robbery . . . . Ms. Bellamy reported seeing these individuals to firefighter Brown, describing their clothing[,] . . . their physical descriptions[,] . . . and their route of flight . . . . Firefighter Brown, in turn, then observed individuals matching the same description hastily removing some clothing and then entering the Gold Nissan. He provided that information [to] his fire department dispatch unit,

17

which, in turn [] provided it to the responding officers who relied upon it to subsequently stop the vehicle."); *see also Clifton-Short v. Johnson*, No. 17-6193, 2019 WL 4635799, at *8 (D.N.J. Sept. 24, 2019) ("The officer . . . received physical descriptions of the subjects from his commanding officer. Thus, when the officer recognized two men in the vicinity of the Dunkin Donuts who matched the description of the two suspects, one of whom was wearing the same distinctive jacket with orange lining that was pictured in the video, he had a reasonable, articulable suspicion to stop the two men.") (citation omitted).

The state court also identified facts supporting its finding that the removal of the occupants from the vehicle, drawing of weapons, pat down, and detention pending identification were within the bounds of *Terry*. ECF No. 13-6, Op. at 18–19 ("petitioner concedes that the police officer had reasonable suspicion to pat him down to insure officer safety at the scene of the motor vehicle stop"; Victor "did not comply with the Officer's repeated order to show his hands until the officer produced his service weapon" and, "[a]ccordingly the officers had sufficient objective justification to remove the driver . . . and both passengers"); *Cody*, 2020 WL 2601974, at *3–4 (the detention pending identification was fifteen minutes after the crime was committed—"no longer than reasonably necessary to facilitate the identification process"); *see also United States v. Sharpe*, 470 U.S. 675, 687–88 (1985) (20-minute detention not unreasonable while officer pursued investigation "in a diligent and reasonable manner" and did not delay unnecessarily); *United States v. Scott*, 816 F. App'x 732 (3d Cir. 2020) (investigative stop not elevated to de facto arrest where "officers performed a pat down of Defendants and placed them in police vehicles long enough to bring the manager to the scene to determine if they were the robbers," "the entire process took nineteen minutes, and the record does not reflect any unnecessary delays"); *United States v. Morrison*, No. 19-44, 2022 WL 130776, at *9 (W.D. Pa. Jan. 14, 2022) ("Defendant makes much

of the fact that Officer Gillette did not 'know' that defendant had committed a theft and he had not witnessed a single act of criminal conduct by defendant. But this position misses the forest for the trees. It is the totality of the circumstances that supplies the viewpoint from which the propriety of a stop is to be evaluated."); *United States v. Pennycooke*, 566 F. Supp. 3d 304, 311 (E.D. Pa. 2021) ("The officers' actions were necessary to protect their personal safety and therefore did not turn the stop into an arrest. To find otherwise would be unreasonable.") (footnotes omitted).

The state court further specified facts supporting its finding that the clothing was in plain view and the cash was not seized until after the arrest. ECF No. 13-6, Op. at 18–19 ("Officer Rios . . . discovered a bundle of cash . . . during a *Terry* frisk for weapons"; the cash was not seized until petitioners were arrested; "[w]hen the[] occupants were lawfully removed from the vehicle, the clothing remained visible on [the] front passenger floorboard" and "was in plain view of the officer and was similar to the initial description of the robbers given by the crime scene witness").

As the record supports the state courts' findings that (a) Cody was stopped and detained on reasonable suspicion pending the identification procedure; (b) Cody was not arrested until after Singh identified him as a perpetrator; (c) there was justification to remove the occupants from the vehicle; (d) the clothing was in plain view, (e) Cody's detention lasted no longer than needed to complete the show-up, and (f) the cash was not removed from Victor's person until after the arrest, a motion to suppress the evidence obtained at the time of the motor vehicle stop would have been meritless. As counsel cannot be deemed ineffective for failing to raise a meritless motion, the state courts' rejection of this claim, *see* ECF No. 13-6, Op. at 18, was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented. *See Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008) ("Counsel cannot be found ineffective for failing to bring meritless motions."); *United States v.*

19

*Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); *Parson v. Att'y Gen. of N.J.*, No. 19-10564, 2021 WL 4593317, at *8 (D.N.J. Oct. 5, 2021) ("As the state courts found that the motion in question would not have resulted in the suppression of the evidence in this case, and as that conclusion is well supported by applicable federal law, it is clear that the suppression motion Petitioner contends should have been filed was meritless, and the failure to file it cannot serve as a basis for finding counsel ineffective."); *United States v. Zareck*, No. 09-168, 2021 WL 4391393, at *64 (W.D. Pa. Sept. 24, 2021) ("[I]f Zareck's counsel filed a motion to suppress the ammunition because the police officers unlawfully seized it, the court would have concluded that the ammunition was lawfully seized pursuant to the plain view doctrine and denied the suppression motion on that basis. Zareck, therefore, did not show that his counsel's performance was deficient or that he was prejudiced by his counsel's performance."). Habeas relief on Ground One will be denied.

### 2. Ground Two

Cody argues that trial counsel was ineffective during plea negotiations for advising him that the gas station surveillance video and clothing evidence would not be used against him. ECF No. 3 at 23–24. Cody contends that based on this advice, he rejected a 10-year plea deal and elected to go to trial. *Id.* at 23. However, the record does not support his assertion that he could have pleaded guilty pursuant to a plea deal, but instead elected to go to trial. Rather, it appears that the State conditioned its plea offer on *both* Cody and his brother Victor pleading guilty, but Victor declined to do so, thereby eliminating the opportunity for Cody to plead guilty pursuant to an agreement with the State. Indeed, the record reveals that during sentencing, in support of his argument in opposition to the State's application for an extended term, counsel advised the trial

judge that Cody had been unable to plead guilty pursuant to a plea deal because any offer was

contingent on all defendants pleading guilty and Victor did not reach an agreement to do so.

Counsel explained:

> There was a plea bargain offer. . . . [I]t was my belief that this case was going to
> work out. . . . And it did not work out because Mr. Victor Cody did not want to
> work his case out for the numbers that were on the table . . . .
>
> . . .
>
> [W]hat I'm willing to say is that there was a plea bargaining process that . . . Joseph
> Cody was very interested in engaging in. I don't have the very first offer that [the
> prosecutor] rendered with me today, but that's what my recollection is, it was either
> 10 to 12. But I can tell you that I was hopeful that there was going to be plea
> negotiations. Mr. Cody was hopeful there were going to be plea negotiations. . . .
>
> And from there, it kinda deteriorated. . . . [P]lea negotiations broke down. And I
> submit it was not because Mr. Joseph Cody did not want to resolve this case. It is
> my belief that . . . if . . . either the contingency was broken; or, if Mr. Cody was
> arrested by himself, this case would not have been tried and he would have accepted
> the plea bargain offered to him by the state.
>
> . . .
>
> [U]nfortunately, [he] found himself in a unique situation where he was not allowed
> to . . . plea in this case.

ECF No. 13-23 at 50-52 (sentencing transcript).

Additionally, in his brief on direct appeal, Cody advised the Appellate Division that he had

been unable to plead guilty pursuant to a plea deal:

> Defense counsel said from "the very beginning, shortly after he was arrested,"
> Joseph Cody wanted to accept a plea but could not do so because the State's plea
> offer was contingent on his codefendant Victor Cody also accepting his plea offer.
> He said Joseph Cody wanted "to admit his responsibility and accept the
> punishment," but he was "not allowed to . . . plea . . . ." Defense counsel explained
> that plea negotiations broke down "not because Mr. Joseph Cody did not want to
> resolve this case." . . .
>
> The trial judge accepted counsel's statement that Joseph Cody "was willing to . . .
> admit responsibility . . . through a guilty plea" . . . . Even though Joseph Cody was
> unlike his codefendant, who was never willing to plea, the trial judge said Joseph

> Cody "does not stand in substantially different . . . shoes than Victor Cody in that
> he has never acknowledged his responsibility for this crime."

ECF No. 13-3 at 62–63 (citations omitted).

On direct appeal, the Appellate Division noted that "Joseph's counsel indicated that, during plea negotiations, Joseph was willing to resolve the matter but Victor was not, and that the State apparently conditioned any plea offer on acceptance by both defendants." *Cody*, 2016 WL 3369531, at *13 (N.J. Super. Ct. App. Div. June 20, 2016). Further, on appeal of the denial of Victor's PCR petition, the Appellate Division noted that Victor rejected the State's plea offer. *State v. Cody*, No. A-0756-18T2, 2020 WL 2601977, at *5 (N.J. Super. Ct. App. Div. May 22, 2020).

The Appellate Division rejected Cody's claim on collateral review.[5]  *See Cody*, 2020 WL 2601974, at *2, 5; *see also Harrington v. Richter*, 62 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The Appellate Division's rejection of this claim was reasonable given that the proposed plea deal to Cody was part of a "package deal." As an initial matter, the Third Circuit has "explained that there is a 'package deal plea bargain[] [when] the government accepts a defendant's guilty plea on the condition that his co-defendants also plead guilty.'" *United States v. Hall*, 515 F.3d 186, 194 (3d Cir. 2008) (quoting *United States v. Hodge,* 412 F.3d 479, 489 (2005) (brackets added in *Hall*)). "There is no question that package deal plea bargains are

---

[5] The PCR court had rejected Victor's identical claim on the basis that Victor's pretrial memorandum executed on the plea cutoff date "memorializes that the only outstanding pretrial motion to be heard was the *Wade* hearing," and "[t]he State was under no obligation to provide a plea offer after that plea cutoff date"; "[t]hus, the status of any pretrial motions was clearly communicated to [Victor] before he rejected the plea offer." ECF No. 13-6, Op. at 22. The court also noted that "even if Victor Cody was mistaken as to whether he could continue to litigate suppression of the physical evidence seized, those motions lacked merit." *Id.*

constitutional," a "nearly axiomatic [conclusion] given the nature of our criminal justice system, of which plea bargains are an essential part." *Hodge*, 412 F.3d at 490 (internal quotation marks omitted).

Here, Cody offers nothing more than his self-serving statement that counsel advised him that the gas station surveillance video and clothing evidence would not be used against him, which, he claims, caused him to reject a plea offer. ECF No. 3, Attached Pages, at 7–8. However, counsel represented to the trial court that Cody never had the opportunity to plead guilty pursuant to a deal with the State in light of Victor's unwillingness to plead, and Cody did not contest that representation. ECF No. 13-23; *see also*, *e.g.*, *Nein v. Tricam Indus., Inc.*, No. CV 16-3752, 2019 WL 4386400, at *2 (E.D. Pa. Sept. 13, 2019) ("Plaintiff's counsel is a responsible officer of this Court and as such we will take his statements as truthful."); *Crego v. Sec'y, Dep't of Corr.*, No. 14-1528, 2018 WL 11207956, at *8 (M.D. Fla. Dec. 27, 2018) (relying, *inter alia*, on the representations of defense counsel—"an officer of the court"—in rejecting ineffective assistance claim); *Virag v. Diaz*, No. CV 13-4872, 2015 WL 5092686, at *11–13 (C.D. Cal. Aug. 26, 2015) ("Petitioner has provided nothing but his self-serving statements to support his claims that he told counsel . . . that he wanted to accept the . . . plea offer. More importantly, his claim is belied by the record. At the . . . pretrial hearing, the prosecutor stated that it had been made clear to the People that Petitioner had 'no real interest' in accepting a plea agreement in the 12–year range. Both Petitioner and counsel were at this hearing, and neither contested the prosecutor's characterization of the offer or Petitioner's lack of interest.") (citations omitted), *report and recommendation adopted*, 2015 WL 5096398 (C.D. Cal. Aug. 28, 2015). Moreover, Cody restated and relied on those representations in support of his arguments to the Appellate Division on direct review. ECF No. 13-3 at 62–63. Similarly, the State confirmed in its answer to the habeas petition

23

that Cody could not have pleaded guilty pursuant to an agreement and therefore suffered no prejudice, *see* ECF No. 12 at 25 ("Petitioner cannot establish prejudice because the State was entitled to withdraw the plea offer conditioned on both defendants pleading when petitioner's co-defendant refused to plead guilty."), 26 ("The State's plea offer was conditioned on both petitioners pleading guilty. Victor was unwilling to enter a plea."), yet Cody failed to reply or deny that the plea offer was contingent on all defendants pleading guilty.

For these reasons, Cody has not established that but for counsel's alleged deficient performance, the outcome would have been different. Thus, he has failed to demonstrate prejudice. *See*, *e.g.*, *United States v. Moten*, No. 10-620, 2022 WL 1982764, at *3 (E.D. Pa. June 6, 2022) ("Petitioner acknowledges that the plea discussions were global in nature and required all defendants to accept the offer. This acknowledgement proves that the prosecution did not offer a standalone offer to Petitioner, but instead, the offer was contingent on all defendants accepting it. Thus, Counsel could not have been ineffective if the Government did not make [a] plea offer."); *United States v. Hellinger*, No. 14-1202, 2015 WL 539537, at *10 (E.D. Pa. Feb. 9, 2015) ("Petitioner has failed to establish that he could have convinced his other co-Defendants to accept the Linked Offer. . . . Petitioner has not met his burden of establishing prejudice. Accordingly, his claim of ineffective assistance of counsel must fail."); *Mickens v. United States*, 257 F. App'x 461, 463 (petitioner failed to show prejudice where two of his co-defendants refused to accept the global plea offer and the offer expired); *Pearson v. Westbrooks*, No. 16-03018, 2019 WL 295090, at *11 (M.D. Tenn. Jan. 22, 2019) ("The state court reasonably determined that any plea offer to Petitioner was contingent on Elvin pleading guilty, and Elvin did not agree to do so. Thus, it found that any plea discussion did not result in a 'formal offer' to Petitioner . . . ."); *Rise v. Glebe*, No. 14-1218, 2015 WL 4877836, at *12 (W.D. Wash. June 9, 2015) ("Without a plea offer on the table, the

Court is unable to engage in *Lafler*'s prejudice inquiry, namely whether the plea offer would have been presented to the court, accepted by the trial judge, and more favorable than petitioner's ultimate sentence."), *report and recommendation adopted*, 2015 WL 4877848 (W.D. Wash. Aug. 14, 2015).

On this record, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented. Habeas relief on Ground Two will be denied.

### 3. Ground Three

Cody argues that trial and appellate counsel were ineffective for failing to raise the issue of the trial court's "intrusion into the jury's deliberative process." ECF No. 3 at 25. As explained below, the state courts reasonably rejected this claim.

During deliberations, the jury sent out a note reading: "If the jury has exhaustively reviewed the evidence multiple times and still finds itself in an irreconcilable impasse, how can we possibly proceed?" ECF No. 13-22 at 3. Over counsel's lengthy objection, ECF No. 13-22 at 5–11, the trial court provided the jury with a copy of the instructions and charged as follows:

> It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. You are to consider the evidence and apply it to the law as I instructed you before you began your deliberations. For your convenience, I'm providing you with a copy of these written instructions marked C-13A.
>
> **Now, these written instructions are not being given to you for the purpose of changing your individual opinions of the evidence. It is your own recollection of the facts that controls. Feel free to use these written instructions or not use them as you continue your deliberations.**
>
> In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your

honest conviction as to the weight of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans. You are judges—you are judges of the facts.

With those instructions and with a copy of the written charge, you are to continue your deliberations. The Court will receive either a verdict sheet or further communication from the jury as you deem it appropriate.

ECF No. 13-22 at 14–16 (emphasis added). Counsel's objection resulted in the addition of the bolded language, which he proposed. *Id.* at 14.

The PCR court rejected Cody's argument that counsel was ineffective for failing to raise the issue of the trial court's intrusion into the jury's deliberative process, finding (a) trial and appellate counsel raised the issue at trial and on direct appeal, and (b) "trial counsel vigorously challenged the trial court's instruction to the jury in response to the jury note":

[P]etitioners allege trial counsel was ineffective for failing to challenge the jury charge. However, trial counsel challenged the Court on the issue of the jury deliberations, the jury instructions, and the standard "modified" *Allen*[6] charge. Trial counsel raised the exact issues petitioner now raises as the ground for an ineffective assistance of counsel claim. This court's use of a modified *Allen* charge is a decision made in the exercise of its sound discretion. Petitioners have failed to demonstrate any deficiency in trial counsel's performance or that there was any coercion due to the court's modified instruction.

ECF No. 13-6, Op. at 23 (citations omitted).

The Appellate Division affirmed:

In his pro se supplemental brief, defendant argues that his trial counsel was ineffective for not objecting to the modified *Allen* charge, approved by our Supreme Court in *Czachor*. When the jurors reported they had reached an impasse, the trial court instructed them to continue their deliberations and gave them a *Czachor* instruction. Defendant contends his trial counsel was ineffective because counsel failed to object and request the court inquire whether further deliberations would result in a verdict. And, defendant asserts that the trial court should not have provided the jury with written instructions. He also contends appellate counsel was ineffective for failing to raise these issues on appeal. Defendant's arguments are without merit.

---

[6] *Allen v. United States*, 164 U.S. 492 (1896).

> In *Czachor*, our Court disapproved the charge for a deadlocked jury that had been sanctioned by the Supreme Court of the United States in *Allen*. The Court held in *Czachor* that the conventional *Allen* charge was unduly coercive and did not "permit jurors to deliberate objectively, freely, and with an untrammeled mind." Before a trial court gives a jury a *Czachor* charge, it should inquire whether further deliberations would be fruitful, however, that is not always required.
>
> In this case, the trial court provided the jury with the charge approved by the Court in *Czachor*, and set forth in our Model Jury Charges (Criminal). The record shows that the trial court did not coerce the jury into reaching a verdict. Defense counsel objected to the instruction but, at that point, the jury had only been deliberating eleven hours. The jury continued its deliberations and returned a verdict. Defendant has not shown that the result here would have been different if the judge had questioned the members of the jury before giving the *Czachor* charge. Appellate counsel also was not ineffective in failing to raise this issue on appeal. We are satisfied that the PCR court's determination was not erroneous.

*Cody*, 2020 WL 2601974, at *5–6 (citations omitted). The Appellate Division also noted that Cody raised the issue on direct appeal in his pro se supplemental brief, Victor raised the issue in his appeal, the appeals were consolidated, and the court "rejected Victor Cody's contention that the trial judge erred by providing the *Czachor* instruction." *Id.* at *6; *see also Cody*, 2016 WL 3369531, at *2.

Given that (a) trial counsel objected to the trial court's response to the jury note and the court modified its charge in response, and (b) both Victor's counsel and Cody raised the ineffective assistance of counsel claim on appeal, the state courts reasonably rejected this claim, reasoning that counsel was not ineffective because the claim was, in fact, raised and adjudicated at trial and on appeal and Cody therefore could not establish that but for counsel's alleged deficiency the outcome at trial would have been different.

The state courts also reasonably rejected Cody's arguments that the trial court coerced the jury into reaching a verdict and improperly provided the jury with written instructions. *See*, *e.g.*, *Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 936 (3d Cir.1974) ("Absent peculiar evidence indicative of coercion, it is proper for a judge to instruct a deadlocked jury to continue

deliberations and attempt to arrive at a verdict."), *abrogated on other grounds by Corley v. United States,* 556 U.S. 303 (2009); *Thomas v. Davis*, No. 19-21859, 2023 WL 2596891, at *11 (D.N.J. Mar. 22, 2023) ("To the extent Petitioner wishes to rechallenge the trial judge's instructions based on *State v. Czachor*, 413 A.2d at 598 (N.J. 1980), or other state law cases, such errors would be errors of state law, and federal habeas 'relief does not lie for errors of state law.'") (quoting *Estelle*, 502 U.S. at 67); *Stansbury v. Dist. Att'y of Cnty. of Philadelphia*, No. 18-02022, 2020 WL 13566214, at *18 (E.D. Pa. Aug. 21, 2020) ("Giving written jury instructions to the jury does not offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (quotations and citations omitted), *report and recommendation adopted*, No. 18-2022, 2021 WL 9563386 (E.D. Pa. Sept. 16, 2021); *Kinney v. Nogan*, No. 17-5608, 2020 WL 1466361, at *7 (D.N.J. Mar. 26, 2020) ("Petitioner has not pointed to any Supreme Court precedent that proscribes providing jury instructions in written form . . . ."); *Shaw v. Bell*, No. 206-14506, 2009 WL 1508170, at *7 (E.D. Mich. May 29, 2009) ("a state trial court's decision as to whether to send written instructions into the jury room is not cognizable on habeas review"); *U.S. ex rel. Hancock v. McEvers*, 619 F. Supp. 882, 886 (N.D. Ill. 1985) (no constitutional error was shown because of delay in presenting jury with written copies of instructions until after they had begun deliberations, especially as jurors had sufficient knowledge of the charge and instructions based on oral instructions).

Accordingly, on this record, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented. Habeas relief will be denied on Ground Four.

### 4.    Ground Five

Cody argues that the cumulative effect of trial and appellate counsels' alleged errors amounted to ineffective assistance of counsel. ECF No. 3 at 29–31. The Appellate Division rejected this claim on the basis that it was "without sufficient merit to warrant discussion in a written opinion." *Cody*, 2020 WL 2601974, at *6 (citing R. 2:11-3(e)(2)).

Given the Appellate Division's reasonable findings that the claims of alleged errors discussed above were meritless, its rejection of Cody's cumulative error claim was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented. *See United States v. Herrera-Genao*, 419 F. App'x 288, 296 (3d Cir. 2011) ("Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails."); *United States v. Tiangco*, 225 F. Supp. 3d 274, 290 (D.N.J. 2016) ("I have considered the defendant's claims of error cumulatively. Individually, they do not raise a substantial possibility of prejudice. Taken together, they likewise do not suggest any prejudice, unfairness, or evidentiary insufficiency that would warrant a new trial or judgment of acquittal."). Habeas relief on Ground Five is denied.

### C.  Evidentiary Hearing and Pro Bono Counsel

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (internal citation omitted). "A district court is required to hold an evidentiary hearing only when the petitioner presents a prima facie showing that 'a new hearing would have the potential to advance the petitioner's claim.'" *Porter v. Adm'r of N.J. State Prison*, No. 20-2048, 2021 WL

2910944, at *4 (3d Cir. July 12, 2021) (quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)). Cody has not made a prima facie showing that a hearing would advance his claims. Accordingly, the Court finds an evidentiary hearing is not warranted and his motion for an evidentiary hearing is denied. ECF No. 16.

Further, in light of the Court's denial of Cody's petition, his motion for pro bono counsel is denied as moot. ECF No. 16.

### D.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

### E.  CONCLUSION

For the foregoing reasons, Cody's petition (ECF No. 3) and motion for an evidentiary hearing and pro bono counsel (ECF No. 16) are denied and no certificate of appealability shall issue.  An appropriate order follows.


DATED:  May 30, 2023                          _____
                                              *s/ Claire C. Cecchi*
                                              **CLAIRE C. CECCHI, U.S.D.J.**